IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-00832-PAB-KMT

CROSS RIVER BANK,

    Plaintiff,

v.

JULIE ANN MEADE, in her official capacity as Administrator of the
Uniform Consumer Credit Code for the State of Colorado,

    Defendant.

---

DEFENDANT'S 12(b)(1) and (6) MOTION TO DISMISS CROSS RIVER'S COMPLAINT
[DKT. #1]

---

Defendant Julie Ann Meade ("Administrator") filed a civil enforcement action ("Enforcement Action") in Denver District Court against Marlette Funding LLC, relating to loans made to Colorado consumers. (**Ex. A**.)[1] The Administrator alleges that Marlette and Cross River Bank, a New Jersey state-chartered bank, have entered into an arrangement whereby Marlette purports to use Cross River's right under federal law to "export" the interest rate of Cross River's home state when lending in Colorado in order to exceed Colorado's state interest rate caps. (*Id.* at ¶ 27.) However, Marlette is the true lender of the loans—performing the tasks fundamental to lending and holding the predominant economic interest in the loans. (*Id.* at ¶¶ 31-

---

[1] In resolving a motion to dismiss, the Court may consider documents referenced in the complaint or that otherwise inform the basis of the plaintiff's claim and may take judicial notice of facts which are a matter of public record. *Wolfe v. AspenBio Pharma, Inc.*, 2012 U.S. Dist. LEXIS 130490, *7 (D. Colo. Sept. 13, 2012).

1

33.) Cross River receives a small share of the profit (approximately 1%) for its nominal role in the arrangement. (*Id.* at ¶ 33.)

The Enforcement Action against Marlette—not Cross River—asserts only state-law claims. Marlette removed the case to this Court (No. 1:17-cv-00575-PAB-MJW), claiming federal preemption as the basis for jurisdiction. The Administrator's remand motion is pending.

In the meantime, Cross River filed this suit, seeking to address the federal preemption issues already being litigated in the Enforcement Action. Cross River's claim, which seeks only declaratory and injunctive relief, should be dismissed because:

1. this Court lacks subject matter jurisdiction over Cross River's claim under the well-pleaded complaint rule;
2. the alleged injury belongs to Marlette, and Cross River thus lacks standing;
3. Cross River's suit fails as a matter of law because the subject preemption rights cannot be enforced by non-banks; and
4. pursuant to *Younger* abstention, Cross River's complaint should be dismissed if the Administrator's pending motion to remand the Enforcement Action is granted.

## ARGUMENT

### I. The Court lacks subject matter jurisdiction under the well-pleaded complaint rule because Cross River seeks only to establish a defense

Cross River asserts that this Court has subject matter jurisdiction over its claims pursuant to 28 U.S.C. § 1331 and §§ 2201-2202. (Dkt. #1, at ¶ 13.) As the plaintiff, Cross River bears the burden of establishing the Court's subject matter jurisdiction. *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008). Applying the well-pleaded complaint rule, however, this Court lacks subject matter jurisdiction over Cross River's claim.

The well-pleaded complaint rule provides that a federal preemption defense does not, by itself, give rise to federal question jurisdiction. *See Ben. Nat'l Bank v. Anderson,* 539 U.S. 1, 6

(2003) ("a defense that relies on … the pre-emptive effect of a federal statute … will not provide a basis for removal") (citations omitted). When a party seeks to declare that a state law is preempted, the suit effectively reverses the position of plaintiff and defendant—stating an affirmative defense in the form of a complaint. Under those circumstances, the well-pleaded complaint rule nevertheless applies. "Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction…." *Madsen v. Prudential Fed. S&L Ass'n*, 635 F.2d 797, 803 (10th Cir. 1980) (citation omitted).

Here, Cross River seeks a declaration, based on the Administrator's Enforcement Action against Marlette, that Colorado law is preempted by federal banking law. (Dkt. #1, at ¶ 104.) The character of the state-court action determines whether there is federal question jurisdiction, and the Administrator asserts only state-law claims in that action. Accordingly, under the well-pleaded complaint rule, the Court lacks subject matter jurisdiction over Cross River's suit.

An exception to the well-pleaded complaint rule exists but is inapplicable here. The Supreme Court has held that state usury claims asserted directly against a *national* bank are "completely preempted" notwithstanding the well-pleaded complaint rule. *See Anderson*, 539 U.S. at 11. Cross River, however, is a state bank. The Supreme Court has never applied the complete preemption doctrine to usury claims against state-chartered banks.

The Eight Circuit has held that usury claims against state banks are *not* completely preempted, examining the textual differences between the two applicable federal interest exportation statutes in support of its conclusion. *Thomas v. US Bank Nat'l Ass'n*, 575 F.3d 794,

799-800 (8th Cir. 2009) (rejecting contrary holdings of the Third and Fourth Circuits which did not examine the textual differences). As a state bank, complete preemption therefore does not apply, and Cross River's claims should be dismissed for lack of subject matter jurisdiction.

**II.     Cross River lacks standing because the Enforcement Action seeks relief only from Marlette; the alleged Cross River injury is too attenuated**

Throughout its complaint, Cross River alleges that it has standing because it has suffered harm as a result of the Enforcement Action. (Dkt. #1, at ¶¶ 10, 93-97.) However, the Enforcement Action seeks no relief against Cross River. (1:17-cv-00575-PAB, Dkt. #5 (Ex. A)) Aside from Cross River's conclusory allegations, which cannot give rise to standing, the alleged injuries identified by Cross River belong to Marlette or are too attenuated to constitute standing.

A federal plaintiff must establish standing by alleging "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Qwest Corp. v. PUC of Colo.*, 479 F.3d 1184, 1191 (10th Cir. 2007) (citation omitted). Cross River alleges broadly that it "has been—and continues to be—harmed as a result of the" Enforcement Action. (Dkt. #1, at ¶ 93.) However, such conclusory allegations do not give rise to standing. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Cross River also alleges past and continuing loss of revenue—not as a result of any action taken directly against Cross River—but as a result of the Enforcement Action's challenge to *Marlette's* ability to enforce the bank's interest exportation rights on purchased loans. (Dkt. #1, at ¶¶ 93-97.) However, another district court has rejected this exact argument, holding that a bank's allegations of such indirect harm do not give rise to standing. *See Goleta Nat'l Bank v. Lingerfelt*, 211 F. Supp. 2d 711, 714, 719 (E.D. N.C. 2002).

4

In *Lingerfelt*, a state attorney general sued a non-bank payday lender, alleging that the non-bank was liable under state usury law for charges that it made on loans that purported to be originated by a national bank. *Id.* at 713-14. After the non-bank unsuccessfully attempted to remove the attorney general's state claims to federal court, the bank sued the attorney general in a separate action in federal court and sought a declaration that the payday lender, which acted as the bank's "agent in promoting, originating, and servicing [the bank's loans]," was not subject to state usury laws because of the bank's interest exportation rights. *Id.* at 714 & n. 4.

In dismissing the bank's claim for lack of standing, the court reasoned that the attorney general asserted only state-law claims against the non-bank, that the attorney general had alleged the bank was not the true lender, and that the indirect effect on the bank was not enough to give it standing. *Id*. Cross River's complaint raises nearly identical claims, seeking a declaration that the Enforcement Action against Marlette is preempted because of Cross River's role in originating the subject loans. Like *Lingerfelt*, Cross River's allegations are insufficient to give it standing. Accordingly, Cross River's complaint should be dismissed for lack of standing.

### III. Cross River's complaint fails to state a claim under Rule 12(b)(6) because interest exportation does not preempt the application of state usury laws to non-banks as a matter of law

Cross River's claim should also be dismissed under Rule 12(b)(6) because, as a matter of law, it is not entitled to the declaration it seeks. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Cross River contends that its interest exportation right preempts the application of state law with respect to loans that Cross River sells to third parties such as Marlette. (Dkt. #1, at ¶

104.) But, as explained below, that right cannot be assigned to non-banks as a matter of law.[2]

### A. Interest exportation is created by federal statute

Interest exportation originates from the National Bank Act, passed in 1864. Under the NBA, banks may charge "interest at the rate allowed by the laws of the State, Territory, or District where the bank is located." 12 U.S.C. § 85. When a state's usury laws are more restrictive than the laws of a national bank's home state, "state usury laws must … give way to the federal statute." *Marquette Nat'l Bank v. First of Omaha Serv. Corp.*, 439 U.S. 299, 318 n. 31 (1978).

The NBA's exportation provision does not apply to state-chartered banks; however, Congress extended interest exportation rights to FDIC-insured state banks by enacting Section 521 of Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA").[3] *See Greenwood Trust Co. v. Mass.*, 971 F.2d 818, 826 (1st Cir. 1992) (citing 12 U.S.C. § 1831d(a)).

### B. Only banks can export interest; the right cannot be enforced by bank subsidiaries, affiliates, or agents, and cannot be assigned

Cross River asserts that federal law preempts Colorado's ability to enforce its usury laws against Marlette. (Dkt. #1 at ¶ 104.) When courts determine whether federal statutes preempt state law, the "ultimate touchstone" is the intent of Congress. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992). Thus, the inquiry here is whether Congress, when enacting the interest

---

[2] Pursuant to this Court's 12(b)(6) practice standards, the Administrator does not contend that Cross River failed to plead a necessary element of its claim; rather, the Administrator contends Cross River is not entitled to the relief it seeks as a matter of law.

[3] Section 521 of DIDA was codified by adding Section 27 to the Federal Deposit Insurance Act (12 U.S.C. § 1831d).

exportation provisions of the NBA and DIDA, intended to preempt state laws that would otherwise apply to non-banks.

If Congress has not explicitly stated that a statute is intended to preempt a specific area of state law, a court can find that a state law is preempted only if the statute's "structure and purpose" reveal an implicit Congressional intent to preempt. *Barnett Bank, N.A. v. Nelson*, 517 U.S. 25, 30 (1996) (citation omitted). This occurs where Congress has created a pervasive regulatory scheme (field preemption) or if a state law prevents or significantly interferes with federal law (conflict preemption). *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990).

Federal banking laws do not preempt the entire field of regulation. *Nelson*, 517 U.S. at 33. Instead, a conflict preemption analysis applies. 12 U.S.C. § 25b(b) (adopting the *Nelson* preemption standard and confirming that the NBA "does not occupy the field in any area of State law"); *Bankwest, Inc. v. Baker*, 411 F.3d 1289, 1302 (11th Cir. 2005) (applying conflict preemption to state bank loans), *vacated as moot*, 446 F.3d 1358 (11th Cir. 2006).

Congress could have provided in the NBA and DIDA that the banks' interest exportation rights preempt state laws as applied to non-banks. However, neither statute includes any such express provision, stating instead that interest exportation rights belong to banks. *See* 12 U.S.C. § 1831d(a); 12 U.S.C. § 85.

Legislation was introduced into Congress last year that would have amended the NBA and DIDA to extend exportation rights to non-banks. House Bill 5724 sought to amend both statutes to provide that "[a] loan that is valid when made as to its maximum rate of interest in accordance with this section shall remain valid with respect to such rate regardless of whether

the loan is subsequently sold, assigned, or otherwise transferred to a third party." H.R. 5724, 114th Cong. (2016) (**Ex. B**.) However, House Bill 5724 was never enacted.

In 2007, the Supreme Court held that the NBA interest exportation provision applied to operating subsidiaries and other non-bank "affiliates" of national banks. *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 19-21 (2007) ("The NBA is thus properly read … to protect from state hindrance a national bank's engagement in the 'business of banking' whether conducted by the bank itself or by an operating subsidiary….") But in 2010 Congress overturned *Watters* by enacting the Dodd-Frank Wall Street Reform and Consumer Protection Act. Pub. L. No. 111-203. Dodd-Frank amended the NBA to clarify that the NBA's preemptive scope specifically does *not* extend to subsidiaries, affiliates, or agents of national banks. 12 U.S.C. § 25b(h). *See Gordon v. Kohl's Dept. Stores.*, 172 F. Supp. 3d 840, 863-64 (E.D. Pa. 2016) (noting that Dodd-Frank "effectively overturned" *Watters* and citing 12 U.S.C. § 25b(h) in finding that state-law claims against a store that serviced the national bank's loans were not preempted).

Given that state usury claims against bank subsidiaries, affiliates, and agents are not preempted, such claims certainly are not preempted when asserted against third parties who purchase bank loans. Third-party purchasers act on their own behalf and have an even more remote claim to a bank's interest exportation rights than bank subsidiaries or agents. *E.g. Penn. v. Think Fin., Inc.*, 2016 U.S. Dist. LEXIS 4649, *40-41 (E.D. Pa. Jan. 14, 2016) (preemption defense weaker for loan assignees that for bank subsidiaries) (citing cases).

In accord, the Second Circuit recently held that although a non-bank could purchase credit card debt from a national bank, the non-bank could not enforce the bank's interest exportation rights. *Madden v. Midland Funding, LLC*, 786 F.3d 246, 251 (2d Cir. 2015), *cert.*

*denied*, 136 S. Ct. 2505 (2016). The loan at issue in *Madden* was extended by a national bank to a New York consumer. *Id*. at 248. The loan carried an interest rate that exceeded New York's usury limits but was permissible in the bank's home state. *Id*. at 248-49. The bank then sold the loan to Midland, and the consumer challenged Midland's right to enforce the bank's interest exportation rights. *Id*. The court concluded that applying New York's interest cap to Midland would not "significantly interfere" with the bank's powers; therefore, conflict preemption did not apply. *Id*. at 251-52. The "extension of NBA preemption to third-party debt collectors such as the defendants would be an overly broad application of the NBA." *Id*.[4]

Thus, the language of the relevant banking statutes, supported by the case law, compels the conclusion that Congress unambiguously intended to grant interest exportation rights only to *banks*. Those rights do not preempt state law as applied to non-bank purchasers.

C. <u>The "valid when made" rule is irrelevant to whether Cross River may assign its interest exportation rights</u>

In an effort to rebut the foregoing precedent, Cross River alleges that it may lawfully transfer its interest exportation rights to Marlette pursuant to the "valid when made rule." (Dkt. #1, at ¶¶ 3, 78, 90-92, 103-104.) According to Cross River, that rule provides that "a loan which was non-usurious when made cannot become usurious upon assignment." (*Id*. at ¶ 90.)

As support for this argument, Cross River quotes two Supreme Court cases from the 1800s—*Gaither v. Farmers & Mechs. Bank of Georgetown*, 26 U.S. 37, 43 (1828) and *Nichols v. Fearson*, 32 U.S. 103, 106 (1833). (Dkt. #1, at ¶ 90.) However, Cross River incorrectly interprets

---

[4] Courts have similarly held that preemption rights provided to banks under the Home Owners' Loan Act ("HOLA") (12 U.S.C. §§ 1461 *et seq*.) cannot be assigned because "preemption is not some sort of asset that can be bargained, sold, or transferred." *Gerber v. Wells Fargo Bank*, 2012 U.S. Dist. LEXIS 15860, at *4 (D. Ariz. Feb. 9, 2012).

9

those cases. When the nature of the transactions is examined, it is evident that the valid when made rule applies under circumstances wholly different from those Cross River alleges in this case.

*Gaither* and *Nichols* both address whether promissory notes from valid loans become unenforceable merely because they are transferred (as loan collateral, for example) through a subsequent usurious loan transaction to a new obligee. The cases thus have no bearing on the issue here—whether bank interest exportation rights are assignable—because there is no allegation that Cross River's assignment of the loans to Marlette involves a subsequent usurious transaction.

In *Gaither*, a lender (W.W. Corcorran) made a non-usurious loan (Loan 1) to a borrower (Gaither). 26 U.S. at 41-42. The lender then used the promissory note from Loan 1 as collateral to secure a subsequent loan (Loan 2) from a third party (F&M Bank). *Id*. at 41. Loan 1 was "unaffected with usury in its origin" but Loan 2 carried a usurious rate. *Id*. at 42. The third-party, who received Loan 1's promissory note by assignment from the first lender, sued the borrower to enforce his obligation under the Loan 1 note. *Id*. at 41-42. As a defense, the borrower asserted that because the third party received the note in connection with Loan 2, which was usurious, the third party could not enforce the Loan 1 promissory note against the borrower. *Id*. at 42.

The court rejected the borrower's defense and held that "if the note be free from usury, in its origin, no subsequent usurious transactions respecting it, can affect it with the taint of usury." *Id*. at 43. *Nichols* involved the same general fact pattern as was at issue in *Gaither*.[5]

---

[5] In *Nichols*, the lender (Fearson) made a non-usurious loan (Loan 1). *Nichols*, 32 U.S. at 106. The lender then received a usurious loan from a third party (Nichols) by selling the third party the promissory note from Loan 1 at "a discount beyond the legal rate of interest." *Id*. The

In contrast to *Gaither* and *Nichols*, there is no "subsequent usurious transaction" between Cross River and Marlette that is alleged to invalidate a consumer's loan obligation. Instead, Marlette merely purchased the subject consumer loans from Cross River. (Dkt. #1, at ¶ 5, 84) Accordingly, although Cross River cites to *Gaither* and *Nichols* as primary support for the applicability of the "valid when made rule," neither case provides relevant precedent for the issue presented by Cross River's complaint.[6]

## IV. If the Enforcement Action is remanded, this Court should abstain under *Younger v. Harris*, or, alternatively, decline jurisdiction under the Declaratory Judgments Act

If the Enforcement Action—currently pending in federal court—is remanded pursuant to the Administrator's pending motion, this case is properly dismissed under principles of abstention. Under the *Younger* abstention doctrine, "interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 237-38 (1984). *Younger* and its progeny require federal courts to abstain from exercising jurisdiction if (1) there is an ongoing state criminal, civil, or

---

question presented was whether the obligation under the Loan 1 note was invalidated because the third party received the note through a usurious transaction (the discounted sale of the existing note). The court held that the third party could enforce the note, notwithstanding the subsequent usurious transaction, because, citing *Gaither*, "a contract, which, in its inception, is unaffected by usury, can never be invalidated by any subsequent usurious transaction." *Id.* at 106.

[6] In further support of the valid when made rule, Cross River cites to an amicus brief that the United States and the Comptroller of the Currency collectively submitted to the Supreme Court in connection with *Madden*, *cert denied*, 136 S. Ct. 2505 (2016). (Dkt. #1, ¶ 91.) However, the judiciary—not the executive branch—interprets federal statutes. *Bishop v. Smith*, 760 F.3d 1070, 1090 (10th Cir. 2014). Also, the amicus brief relied upon the misunderstanding of the holding in *Gaither* and *Nichols* that is explained above. *See also Sawyer v. Bill Me Later, Inc.,* 23 F. Supp. 3d 1359, 1369 (D. Utah 2014) (citing *FDIC v. Lattimore Land Corp.*, 656 F.2d 139, 148-49 (5th Cir. 1981), which, in turn, cites to *Nichols* in support of its misapplication of the valid when made rule).

11

administrative proceeding; (2) the state proceeding provides an adequate forum to hear the plaintiff's federal claims; and (3) the state proceeding involves important state interests. *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999).[7] If these three elements are met, *Younger* is mandatory and the case must be dismissed, absent extraordinary circumstances. *Id.*

The type of state civil proceeding that implicates *Younger* is a "civil enforcement proceeding[]" initiated by a state entity to sanction the state-court defendant for a wrongful act. *See Brown v. Day*, 555 F.3d 882, 890 (10th Cir. 2009) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 (1975)). Here, the Administrator filed the Enforcement Action pursuant to her authority to enforce the Uniform Consumer Credit Code (UCCC)—precisely the type of proceeding contemplated by *Younger*. (**Ex.A**.at ¶ 1)

However, the state proceeding has since been removed to federal court, where the Administrator's motion to remand for lack of subject matter jurisdiction is currently pending. (No. 1:17-cv-00620-WJM-STV, Dkt. #28.) If the Court grants the Administrator's motion, *Younger* applies and abstention is required. *See, e.g.*, *Monster Beverage Corp. v. Herrera*, 2013 U.S. Dist. LEXIS 189315 *14-16 (C.D. Cal. December 16, 2013), *aff'd Monster Bev. Corp. v. Herrera*, 650 Fed. Appx. 344 (9th Cir. 2016) (dismissing complaint based on *Younger* abstention after state case was remanded from federal court).

The second element—that the state proceeding provides an adequate forum—is met by

---

[7] This Court has since questioned whether *Amanatullah*'s three-factor test was implicitly overruled by *Sprint Commns. Inc. v. Jacobs*, 134 S. Ct. 584 (2013). *See Brumfiel v. U.S. Bank, N.A.,* 2014 U.S. Dist. LEXIS 171471 (D. Colo. Dec. 11, 2014). However, the Tenth Circuit continues to recite the test. *See, e.g., Hunter v. Hirsig*, 660 Fed. Appx. 711, 714 (10th Cir. 2016). In any event, the Administrator's civil enforcement proceeding, akin to a criminal proceeding, fits within *Sprint's* framework of cases to which *Younger* abstention applies.

12

the Enforcement Action. Cross River seeks a declaration that federal law preempts Colorado's usury laws and seeks an injunction against the Administrator from enforcing Colorado's UCCC against loans it ostensibly originates. (Dkt. #1, at ¶¶ 99-107). Likewise, Marlette raises the same defense in its Notice of Removal. (1:17-cv-00575-PAB-MJW, Dkt. #1, at ¶¶ 4-5.) Anticipating this, the Administrator addressed the inapplicability of federal law in her state-court complaint. (Ex. A, at ¶¶ 29-30.)

Cross River's interests thus are aligned with Marlette's on the issue of preemption because, if remanded, the state court will necessarily determine whether state law applies to the Marlette-purchased loans originated by Cross River. "The rule in *Younger v. Harris* is designed to permit state courts to try state cases free from interference by federal courts," and "[t]he same comity considerations apply … where the interference is sought by [individuals who are] not parties to the state case." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975) (internal quotation marks and citations omitted). Thus, the second element is satisfied.

The final element requires the state proceeding to involve important state interests, which the Administrator's case fulfills. State interests are important when they implicate "matters which traditionally look to state law for their resolution, or implicate separately articulated state policies." *Amanatullah*, 187 F.3d at 1164-65. Usury laws for non-bank entities are traditionally regulated by state law or a state's constitution. "All but a small minority of states have capped interest rates on loans with usury laws, and the price charged for making usurious loans has been regulated by laws in almost every state…" 73 A.L.R.6th 571. Colorado has adopted the UCCC, which applies interest rate caps to consumer credit transactions. *See generally* C.R.S. § 5-1-101 *et seq.* Because the Administrator's complaint involves an issue that traditionally looks to state

law for resolution and implicates state policies, the third element is satisfied. All three *Younger* elements are present, if the Marlette case is remanded to state court, and abstention would then be mandatory. *See Amanatullah*, 187 F.3d at 1163.

Alternatively, this Court may also decline to exercise its jurisdiction under the Declaratory Judgments Act. 28 U.S.C. §§ 2201-2202. The "existence of a 'case' in the constitutional sense does not confer upon a litigant an absolute right to a declaratory judgment." *Kunkel v. Cont'l Casualty Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989). "A federal court generally should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding." *Id.* at 1276. The Tenth Circuit applies a five-factor test in determining whether a district court should decline to exercise jurisdiction:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*State Farm Fire Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994).

Cross River's complaint raises legal issues, already being addressed by the Administrator and Marlette, which will necessarily be decided in the Enforcement Action. Cross River filed this case after the Administrator's complaint was filed against Marlette, and after Marlette removed the case to federal court; thus, the complaint appears to be used for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata." If the Marlette case is remanded to state court, this declaratory action could increase friction between the federal and state courts and

encroach upon state jurisdiction. No declaration by this Court is necessary to resolve the legal issues raised in this case. Accordingly, this Court may decline jurisdiction under the Declaratory Judgments Act.

## CONCLUSION

The Administrator respectfully requests that the Court dismiss Cross River's complaint with prejudice. First, this Court lacks subject matter jurisdiction over the claims because they seek only to enforce a defense to the Administrator's state law claims against Marlette. Second, Marlette, and not Cross River, has standing to litigate. Third, Cross River's claim fails as a matter of law because interest exportation belongs to banks only and cannot be assigned. Finally, the court should dismiss this case pursuant to *Younger* abstention if the Enforcement Action is remanded to state court, or, alternatively, should decline to exercise jurisdiction pursuant to the Declaratory Judgments Act.

CYNTHIA H. COFFMAN
Attorney General

s/ *Nikolai N. Frant*
NIKOLAI N. FRANT
TRINA K. TAYLOR
Assistant Attorneys General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: 720-508-6111
Email: nikolai.frant@coag.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of April, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

| | |
|---|---|
| Edmund Polubinski III, Esq.<br>Lynn Earl Busath, Esq.<br>Bryan McArdle, Esq.<br>Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>Email: edmund.polubinski@davispolk.com<br>lynn.busath@davispolk.com<br>bryan.mcardle@davispolk.com | Craig May, Esq.<br>Wheeler Trigg O'Donnell LLP<br>370 Seventeenth Street, Suite 4500<br>Denver, CO 80202<br>Email: may@WTOtrial.com |

s/ *Michele A. Kendall*
Paralegal