IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-00832-PAB-KMT

CROSS RIVER BANK,
    Plaintiff,
v.

JULIE ANN MEADE, in her official Capacity as Administrator of the Uniform Consumer Credit Code for the State of Colorado,
    Defendant.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (ECF # 17)**

---

    Cross River Bank's Complaint (ECF # 1) describes how Defendant Julie Ann Meade (the "Administrator") has violated the Bank's federal statutory rights. Her ongoing actions—including the enforcement proceeding challenging the well-disclosed interest rates on loans originated by the Bank and later transferred to its contractual partner, Marlette Funding, LLC ("Marlette")—plainly contravene Section 27 of the Federal Deposit Insurance Act ("FDIA"), including the cardinal rule that a loan that is "valid when made" does not become invalid upon transfer. These actions are contrary to federal law, are expressly preempted, and should be enjoined.

    The Administrator's motion to dismiss is meritless. The complaint amply states a claim for a declaratory judgment and an injunction, based on facts that should be materially undisputed. The procedural hurdles the Administrator seeks to erect—the well-pleaded complaint rule, standing, and abstention—are inapplicable here.

## ARGUMENT

**I.    Section 27 Expressly and Completely Preempts the Administrator's Actions**

    The Administrator concedes that the Bank—as a federally regulated, New Jersey chartered

bank—is lawfully entitled under Section 27 to originate loans nationwide at interest rates permitted by New Jersey law, even if in excess of rates permitted under Colorado law. (Mot. at 1.) She also concedes that Section 85 of the National Bank Act ("NBA"), which provides the same right to federally chartered banks, completely preempts state interest rate laws. (*Id.* at 3.) Nevertheless, the Administrator argues that the result should be different under the FDIA for loans that the Bank has transferred to Marlette. (Mot. 3-4, 5-9.) She is wrong under bedrock principles of federal law.

### A. Like the NBA, the FDIA Preempts State Usury Laws

Section 27 of the FDIA has the same preemptive force as Section 85 of the NBA, which it mirrors. As the Administrator concedes (Mot. at 3), because the NBA "provide[s] the exclusive cause of action for such claims, there is, in short, no such thing as a state-law claim of usury against a national bank," and thus, any purported application of state interest-rate law to a <u>national</u> bank's loans is "complete[ly] pre-empt[ed]." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 11 (2003); *accord Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S. 299, 314-15, 318 n.31 (1978).[1] The same conclusion holds for state-chartered banks under Section 27.

Section 27 contains the same operative language as Section 85 of the NBA. Like Section 85, Section 27 permits a state-chartered bank to "charge on any loan . . . interest at a rate of not more than 1 per centum in excess of the [Federal Reserve] discount rate . . . or at the rate allowed by the laws of the State, territory, or district where the bank is located, whichever may be greater." 12 U.S.C. § 1831d(a); *cf. id.* § 85. Also like Section 85, Section 27 applies to "any loan or discount" from a state-chartered bank, not just to state-chartered banks or loans that are not purchased. *See id.* And like Section 86—the NBA's enforcement provision—Section 27(b) provides an exclusive remedy for

---

[1] This preemption extends to state law restrictions on late fees and other terms in addition to interest rates. *See Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735, 744-47 (1996).

borrowers to challenge a loan's interest rates. *Compare id.* § 1831d(b) *with id.* § 86.

Likewise, Congress made clear that the FDIA and the NBA are to be interpreted consistently: The express goal of Section 27 was to "prevent discrimination against State-chartered insured depository institutions," *id.* § 1831d(a), that had arisen from the competitive advantage that national banks had under Section 85—namely, that national banks located in states that allowed higher interest rates were able to export their home state's rates to borrowers in other states and to offer uniform terms to borrowers nationwide. Section 27 thus was enacted "'to provide parity, or competitive equality, between national banks and State chartered depository institutions.'" *Discover Bank v. Vaden*, 489 F.3d 594, 604 (4th Cir. 2007) (alterations omitted) (quoting 126 Cong. Rec. 6,900 (1980) (Statement of Sen. Proxmire)), *rev'd on other grounds*, 556 U.S. 49 (2009). Permitting complete preemption under the NBA but not under the FDIA would directly contravene Congress's clearly stated intention. It would also directly contradict the words of Section 27 which, if anything, are even clearer than their analogue in the NBA. Section 27 contains an express preemption clause that any conflicting "State constitution or statute . . . is <u>hereby preempted</u>." 12 U.S.C. § 1831d(a) (emphasis added).

Courts and the Federal Deposit Insurance Corporation ("FDIC") have overwhelmingly concluded, consistent with the statutory text and purpose, that Section 27 preempts state interest rate limitations. *See Vaden*, 489 F.3d at 604-07; *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 295-96 (3d Cir. 2005); FDIC, Interpretive Letter No. 93-27, 1993 WL 853492, at *1 (July 12, 1993); *see also Greenwood Trust Co. v. Massachusetts*, 971 F.2d 818, 827 (1st Cir. 1992) ("Bank Act precedents must inform [ ] interpretation of words and phrases that were lifted from the Bank Act and inserted into [Section 27's] text."); *Hill v. Chem. Bank*, 799 F. Supp. 948, 952 (D. Minn. 1992) ("[S]ubjecting state banks to the many and various state law remedies while national banks are subject only to the federal

3

remedy would disrupt the 'level playing field' Congress envisioned in enacting [Section 27]."). As a recent decision from the District of Utah summarized:

> "[T]he same express preemption analysis governing Sections 85 and 86 of the National Bank Act applies to preemption of state usury laws under Section 27 of the FDIA and not only because the two provisions are 'virtually identical' in substance, policy, and internal logic—the same constitutionally prudential considerations direct the court's analysis of Section 27's preemption of the usury and late fee claims brought under [state] law . . . ."

*Sawyer v. Bill Me Later, Inc.*, 23 F. Supp. 3d 1359, 1363 (D. Utah 2014).

Instead of addressing the text of Section 27, the Administrator seeks to rely on *Thomas v. U.S. Bank N.A.*, 575 F.3d 794 (8th Cir. 2009) (Mot. at 3-4), an Eighth Circuit case that broke with all of the other federal appellate courts to hold that Section 27, unlike Section 85, does not <u>completely</u> preempt <u>all</u> state usury claims. But *Thomas*—which is an outlier and is not binding on this Court—is incorrect and in any event does not support the Administrator's motion. *Thomas* is wrongly decided because it ignores the express statutory language that makes clear that Section 27 is intended to prevent discrimination against state-chartered banks, and applies a cramped reading to erroneously conclude that Section 27—unlike Section 85—preempts only claims where the rate allowed under federal law exceeds the rate allowed by state law. *Id.* at 799. But even under *Thomas*, the Administrator's attempts to enforce state law here would be expressly preempted. *Thomas* concluded that "[b]y [Section 27's] plain and unambiguous language" the federal remedy does apply, and hence state law claims are preempted, if the rate allowed under federal law exceeds the rate allowed by state law. *Id.* at 799-800. That is the case for every loan at issue here, each of which concededly complies with New Jersey law. Accordingly, even under the *Thomas* court's misreading of Section 27, the

4

Administrator's state law claims regarding loans originated by Cross River Bank are preempted.[2]

**B.  Under the Valid-When-Made Doctrine, the Terms of Loans Originated by Cross River Bank Remain Valid Even if Transferred to Non-Banks**

The Administrator also challenges the cardinal rule of usury law: the valid-when-made doctrine. The Administrator does so mainly by relying on a single recent case, *Madden v. Midland Funding, LLC*, 786 F.3d 246 (2d Cir. 2015)—which never even addressed or applied the principle—and by trying to distinguish on factual grounds two cases that were cited for illustrative purposes in the Complaint.[3] (Mot. at 9-11.) These arguments, however, ignore the overwhelming, longstanding, and consistent weight of authority that has applied the valid-when-made doctrine from the earliest days of the nation through the present, including last year's authoritative statement of the doctrine by the Solicitor General of the United States and the Office of the Comptroller of the Currency (the "SG and OCC") in their *amicus* brief to the Supreme Court in *Madden*.

The valid-when-made principle has existed in U.S. and English law since at least the early 1800s and has been often applied in the centuries since: For a loan to be usurious, "[t]he usury must be part of the contract at its inception." 1 William Blackstone, Commentaries on the Laws of England 379-80 n.32 (18th London ed., W.E. Dean 1838); *see also Moncure v. Dermott*, 38 U.S. 345,

---

[2] Although Section 27 <u>completely</u> preempts state usury laws for the reasons given in the text, this Court need not reach that question to deny the Administrator's motion in this case. As even the *Thomas* court concludes, Section 27 <u>expressly</u> preempts the state interest rate laws at issue here. It therefore more than amply provides subject matter jurisdiction for this action, which was brought pursuant to the Declaratory Judgment Act, the FDIA, and the Supremacy Clause of the United States Constitution (Compl. ¶ 13). (*See* Sec. II.A, *infra*.)

[3] Notwithstanding any differences in underlying facts between this case and the two Supreme Court cases at issue, both cases unambiguously articulated the core principle that has prevailed as the cardinal rule of federal banking law: "a contract, which, in its inception, is unaffected by usury, can never be invalidated by any subsequent usurious transaction." *Nichols v. Fearson*, 32 U.S. (7 Pet.) 103, 106 (1833); *accord Gaither v. Farmers & Mechs. Bank of Georgetown*, 26 U.S. (1. Pet.) 37, 43 (1828).

5

356 (1839) ("If the bond was free from usury in its inception, no subsequent transaction between other parties could invalidate it."); *Satterlee v. Matthewson*, 27 U.S. 380, 416 (1829) ("It is a rule, that if a contract be not in its inception usurious, no matter *ex post facto* shall make it so.") (citation omitted); *Concord Realty Co. v. Cont'l Funding Corp.*, 776 P.2d 1114, 1120 (Colo. 1989); *Tuttle v. Clark*, 4 Conn. 153, 153 (1822); *Watkins v. Taylor*, 16 Va. 424, 436 (1811).

The valid-when-made doctrine thus was a firmly established principle of American law when the earliest predecessor to the NBA was passed in 1864. *See* 13 Stat. 108. In adopting the NBA—and later the FDIA—Congress is presumed to have incorporated the valid-when-made rule into the statute.[4] *United States v. Texas*, 507 U.S. 529, 534 (1993) ("Congress does not write upon a clean slate"; absent evidence of a contrary statutory purpose, legislation is "to be read with a presumption favoring the retention of long-established and familiar principles"); *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). And, as explained above, the text of both statutes—which apply by their terms to "any loan or discount" made by federally or state-chartered banks—likewise reflects the incorporation of the valid-when-made rule into the statutes. (*See* Sec. I.A, *supra*.)

This understanding—that a bank's federal right to originate loans carries with it the power to use such loans for their usual commercial purposes, which include assignment of such loans to others under the same terms—has prevailed consistently for hundreds of years and is a linchpin of the national banking economy. *See, e.g.*, *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 289 (7th Cir. 2005) ("[O]nce assignors were authorized to charge interest, the common law kicked in and gave the assignees the same right, because the common law puts the assignee in the assignor's shoes, whatever the shoe size."); *Phipps v. FDIC*, 417 F.3d 1006, 1013 (8th Cir. 2005); *FDIC v. Lattimore*

---

[4] As explained above, the overriding purpose of the FDIA was to mirror the protections afforded by the NBA, so as not to discriminate against state-chartered banks. (*See* Sec. I.A, *supra*.)

6

*Land Corp.*, 656 F.2d 139, 148-49 (5th Cir. 1981) ("[T]he note, initially non-usurious, remains so. The non-usurious character of a note should not change when the note changes hands."); Brief for the United States and OCC as *Amicus Curiae*, *Midland Funding, LLC v. Madden*, No. 15-610, 2016 WL 2997343, at *6, *9 (U.S. May 24, 2016) (hereinafter "SG Brief") (collecting cases).

In the face of this near unanimous authority, the Administrator's heavy reliance on the Second Circuit decision in *Madden* (Mot. at 8-9) is ill-founded. As reflected in the preceding paragraph, the *Madden* court's failure to apply the valid-when-made principle is contrary to the views of at least three other Circuits, each of which has acknowledged and enforced the valid-when-made rule in these circumstances. For that reason and others, the SG and OCC together explained that the *Madden* decision is "incorrect" and "reflects a misunderstanding of Section 85 and of th[e Supreme] Court's precedents," which dictate that a national bank's authority "to charge interest up to the maximum permitted by its home State encompasses the power to convey to an assignee the right to enforce the interest[-]rate term of the agreement" and that such authority "would be significantly impaired if the national bank's assignee could not continue to charge that rate." SG Brief at *6, *8.[5] The *Madden* decision has already had immediate, lasting, and harmful economic consequences on credit markets and borrowers in the Second Circuit.[6] There is no reason to import *Madden*'s

---

[5] The SG and OCC posited that the *Madden* court's failure to consider (or even acknowledge) the valid-when-made doctrine likely is "attributable at least in part to the lack of clarity in the briefing," which did not mention the doctrine (and did not mention Section 85 of the NBA, which was the source of the interest rate exportation rights at issue in the case). *Id.* at *17-19.

[6] *See generally* Br. Am. Bankers Ass'n *et al.* as *Amicus Curiae*, *Midland Funding, LLC v. Madden*, No. 15-610, 2015 WL 8959419 (U.S. Dec. 10, 2015); Br. Chamber of Commerce *et al.* as *Amicus Curiae*, *Midland Funding, LLC v. Madden*, No. 15-610, 2015 WL 8489383 (U.S. Dec. 10, 2015); Br. Sec. Industry and Fin. Mkts. Ass'n *et al.* as *Amicus Curiae*, *Midland Funding, LLC v. Madden*, No. 15-610, 2015 WL 9184796 (U.S. Dec. 10, 2015); Br. Am. Bankers Ass'n *et al.* as *Amicus Curiae*, *Colorado v. Marlette Funding LLC*, No. 17-cv-575-PAB-MJW (ECF # 49); Br. Marketplace Lending Ass'n as *Amicus Curiae*, *Colorado v. Marlette Funding LLC*, No. 17-cv-575-PAB-MJW (ECF # 46); *cf. Olvera*, 431 (….continued)

erroneous reasoning to this Court.[7]

The Administrator's additional arguments attempting to undermine this settled principle also fail. First, the introduction of House Bill 5742[8]—which would have added text to 12 U.S.C. § 1831d concerning the valid-when-made principle—does not by any means suggest that the valid-when-made rule is not already a part of federal law (Mot. at 7-8). To the contrary, the bill's sponsor introduced the legislation only to "reaffirm . . . longstanding legal precedent" in direct response to the "unprecedented" result in the *Madden* case, which has "created uncertainty" in the banking economy. Press Release, U.S. Congressman Patrick McHenry, *McHenry Introduces Fintech Bills* (July 12, 2016) (available at http://mchenry.house.gov/news/documentsingle.aspx?DocumentID=398260). Second, the Dodd-Frank Act provision cited by the Administrator (Mot. at 8 (citing 12 U.S.C. § 25b(h)(2))) has no application here and does not impact the availability of complete preemption in connection with these loans. The relevant provision and the Supreme Court case it was intended to address concerned the availability of NBA preemption for actions involving lending activity by agents of national banks. *See* 12 U.S.C. § 25b(h)(2); *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1 (2007). But the loans at issue here were made by the Bank, not by an agent of the Bank, and Section 25b(h)(2) does not relate in any way to a Bank's right to transfer loans in accordance with the valid-when-made rule. The Dodd-Frank Act also makes clear elsewhere that the amendment has no effect

---

(continued….)
F.3d at 288 ("[b]orrowers would not benefit on average" from failure to enforce the valid-when-made rule, because "creditors . . . would face higher costs of collection and would pass much of the higher expense on to their customers in the form of even higher interest rates").

[7] Should the Court have any doubt as to the FDIC's position on these central issues, the Court could—like other courts—solicit the regulator's input. *See* Invitation to Solicitor General, *Midland Funding, LLC v. Madden*, No. 15-610 (U.S. March 21, 2016); *Discover Bank v. Vaden*, No. 06-1221, ECF # 45 (4th Cir. Dec. 6, 2006).

[8] Protecting Consumers' Access to Credit Act of 2016, H.R. 5724, 114th Cong. (2016).

on national banks' interest-rate origination rights. 12 U.S.C. § 25b(f).[9]

## II. The Administrator's Other Attempts to Prevent Cross River Bank from Vindicating Its Statutory and Contractual Rights Are Meritless

### A. The Well-Pleaded Complaint Rule Does Not Deprive This Court of Subject Matter Jurisdiction

The Administrator's contention that the Court lacks subject matter jurisdiction under the well-pleaded complaint rule (Mot. at 2-4) fails for two independent reasons.

First, the Administrator has failed to cite controlling Supreme Court and Tenth Circuit precedent that squarely rejects this argument. The Supreme Court has held that "it is beyond dispute" that federal courts have jurisdiction over declaratory judgment actions that, as here (Compl. ¶¶ 106-108), seek injunctive relief against state officials for interfering with federal rights:

> It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983) (internal citation omitted).

The Administrator's argument to the contrary is based only on *Madsen v. Prudential Fed. Sav. & Loan Ass'n*, a case that predates *Shaw* and, in any event, involves a request for a "declaration of the rights and obligations of the parties to [a] trust deed" that did not involve state officials or a request for injunctive relief. 635 F.2d 797, 800 (10th Cir. 1980). That case has no bearing on a declaratory judgment action that also seeks injunctive relief regarding preempted state regulations or

---

[9] The Administrator's analogy (Mot. at 9 n.4) to the out-of-circuit case *Gerber v. Wells Fargo Bank, N.A.*, No. 11-1083, 2012 WL 413997 (D. Ariz. Feb. 9, 2012), is inapposite as *Gerber* deals with an entirely different statute, the Home Owners' Loan Act. In any event, *Gerber* involved state law claims for consumer fraud; state usury laws—and thus the valid-when-made principle—were not even at issue in the case, making it irrelevant here. *See id.* at *2-4.

law, as the Tenth Circuit has expressly recognized. *See ANR Pipeline Co. v. Corp. Comm'n of Okla.*, 860 F.2d 1571, 1575-76 (10th Cir. 1988) (confirming federal question jurisdiction and noting that "[t]he cases upon which [defendant] relies to assert the district court is without federal question jurisdiction"—which included *Madsen*—"involve an action for declaratory judgment that is not coupled with a request for injunctive relief"); *accord Qwest Corp. v. City of Santa Fe*, 380 F.3d 1258, 1263-64 (10th Cir. 2004).

Second, even if the well-pleaded complaint rule did have some application here—which it does not—the Court still would have subject matter jurisdiction because of the complete preemption exception to the well-pleaded complaint rule. *See* Sec. I.A, *supra*; *Garley v. Sandia Corp.*, 236 F.3d 1200, 1207 (10th Cir. 2001). The exception is applicable here because the FDIA completely preempts the application of state usury laws to loans issued by state-chartered banks, regardless of whether the banks choose to hold the loans or to sell, transfer, or securitize them.

### B. Cross River Bank Articulates Numerous, Concrete, Existing and Ongoing Economic Injuries, Each of Which Suffices to Demonstrate Standing

Notwithstanding the Administrator's arguments[10] (Mot. at 4-5), Cross River Bank has pleaded several direct, concrete economic injuries, each of which independently confers standing.

First, Cross River Bank maintains an ongoing financial stake in every loan it originates, including those loans that it sells to Marlette, and will lose revenue on those loans based on the Administrator's continuing interference with Marlette's ability to service them according to their terms. (Compl. ¶¶ 5, 10, 17, 71, 72, 94.) Harm to a pecuniary interest unquestionably confers

---

[10] The Administrator challenges only the injury component of standing. *See* Mot. at 4-5. As defined by the Supreme Court, an injury in fact is the "invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

10

standing. *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 274 (2008) ("[Plaintiffs] base their suit upon a concrete and particularized 'injury in fact,' namely, the [defendants'] failure to pay dial-around compensation."); *Clinton v. City of N.Y.*, 524 U.S. 417, 432-33 (1998). Such standing does not depend upon the harm reaching a certain threshold of severity or significance. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'").

Second, the Administrator's actions have directly impaired Cross River Bank's contracts with Marlette. (Compl. ¶¶ 6, 8, 10, 17, 95.) In particular, as a direct result of the Administrator's unlawful actions, Cross River Bank's ability to extend and transfer new loans under its contractual partnership with Marlette has been constrained. The Administrator's actions also create uncertainty regarding representations, warranties, and conditions precedent in the agreements with Marlette, and therefore interfere with the performance of the agreements and their continued viability. The impairment of a contractual obligation has direct and concrete impact sufficient to convey standing. *See Sprint Nextel Corp. v. Middle Man, Inc.*, 822 F.3d 524, 529 (10th Cir. 2016); *Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1301 (10th Cir. 2008); *ANR Pipeline Co.*, 860 F.2d at 1579.

Third, the Administrator's actions threaten the viability of the marketplace lending model as a whole, on which Cross River Bank and other state-chartered banks rely. (Compl. ¶ 96.) Actions that upset existing market standards or force changes to existing practices also give rise to judicially cognizable injuries. *See, e.g.*, *Sprint Nextel Corp.*, 822 F.3d at 529 (injury in fact based on "interfere[nce] with [party's] alleged business model" sufficient to confer standing); *Chambers Med. Techs. of S.C., Inc. v. Bryant*, 52 F.3d 1252, 1265-66 (4th Cir. 1995).

Fourth, the Administrator's hindrance of Cross River Bank's ability to transfer loans also prevents Cross River Bank from making the number of loans it otherwise would. (Compl. ¶ 97.)

11

Holding onto loans for extended periods of time takes significant resources, and Cross River Bank depends upon its core banking power of transferring loans to diversify its assets and maintain liquidity. The limitation on Cross River Bank's ability to freely originate loans to the extent it otherwise would is an independent harm that alone confers standing. *Clinton*, 524 U.S. at 433 ("[A]ny petitioner who is likely to suffer economic injury as a result of [governmental action] that changes market conditions satisfies this part of the standing test." (int'l quotation marks omitted)).

The Administrator's reliance on a case from the Eastern District of North Carolina, *Goleta Nat'l Bank v. Lingerfelt*, is misplaced. In *Goleta*, a national bank brought an action regarding its payday lending program in North Carolina, alleging only generic, speculative harm. 211 F. Supp. 2d 711, 718-19 (E.D.N.C. 2002). There were no allegations in *Goleta* of any concrete, actual injuries of the kind that Cross River Bank has articulated here—most notably, there were no allegations of <u>any</u> ongoing economic interest by the bank in the loans at issue. *Goleta* is of no relevance here.

Finally, the fact that the Administrator has attempted for strategic reasons to target only Marlette with her enforcement efforts is no barrier to Cross River Bank's standing; courts routinely find standing in declaratory judgment actions brought by parties that are not the nominal target of a defendant's actions, so long as the plaintiff alleges a concrete injury, as the Bank has amply done here. *See Clinton*, 524 U.S. at 422, 429-31 (holding that cancellation of enactment benefitting New York State constituted cognizable injury on New York City); *Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407, 422-23 (1942) (holding that plaintiff national radio network had standing to challenge new regulation directed to radio stations with whom plaintiff contracted); *Protocols*, 549 F.3d at 1301 (consultant had standing to challenge Medicare regulation that applied to the firm's client base).

### C. The *Younger* Abstention Doctrine Does Not Apply for Multiple Reasons

The Administrator's argument that the Court should dismiss this case pursuant to the

abstention doctrine from *Younger v. Harris* (Mot. at 11-14)—which the Supreme Court has stressed "is the exception, not the rule," and hence "rarely should be invoked, because the federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them," *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (int'l quotation marks omitted)—suffers from at least four defects, each of which independently precludes abstention.

First, the argument is premature, as it is premised on the *Marlette* action being remanded to state court. Remand of the *Marlette* case is unwarranted, however, because the Administrator's claims against Marlette are completely preempted. *See* Sec. I.A, *supra*; Def.'s Opp. Pl.'s Mot. Remand, *Colorado v. Marlette Funding LLC*, No. 1:17-cv-00575-PAB (ECF # 37).

Second, even if the action against Marlette were remanded,[11] there would still be no "ongoing state criminal, civil, or administrative proceeding" against Cross River Bank. As this Court has noted, "'it is proper for a federal court to exercise jurisdiction over the claim of a genuine stranger to an ongoing state proceeding even though a federal decision clearly could influence the state proceeding by resolving legal issues identical to those raised in state court.'" *Vail Dev. 09 LLC v. Ground Eng'g Consultants, Inc.*, No. 10-CV-00568, 2010 WL 2867861, at *5 (D. Colo. July 20, 2010).

The Administrator's argument that "Cross River's interests . . . are aligned with Marlette's" (Mot. at 13 (emphasis added)) does not cure this mismatch of parties between this action and a hypothetical state action. Similarly, her analogy to *Hicks v. Miranda* (*id.*) is unavailing and disregards Supreme Court precedent to the contrary. Unlike here, *Hicks* involved parties with

---

[11] The Administrator relies on *Monster Beverage Corp. v. Herrera* to justify applying *Younger* following remand (Mot. at 12), but *Monster* did not involve the deficiencies discussed in this section. No. 13-00786, 2013 U.S. Dist. LEXIS 189315, at *14-16, *24-25 (C.D. Cal. Dec. 16, 2013) (federal plaintiff was the defendant in the state action and did "not challenge the adequacy of the state court to hear the federal constitutional claims"), *aff'd,* 650 F. App'x 344 (9th Cir. 2016).

13

"employer/employee relationships" such that they "suffice[d] to serve as 'alter egos' and to justify application of the *Younger* doctrine to a state-court 'stranger.'" *Vail Dev.,* 2010 WL 2867861, at *5 (describing narrow holding of *Hicks* and denying motion to dismiss under *Younger*). As the Supreme Court itself clarified after *Hicks*, entities that are "unrelated in terms of ownership, control, and management"—as Marlette and Cross River Bank are here—are distinct for *Younger* purposes even if they have "similar business activities and problems." *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928-29 (1975). To hold otherwise would permit the Administrator through artful pleading to prevent Cross River Bank from protecting its rights.

Third, the *Marlette* action does not involve "important state interests" for purposes of *Younger*. As the Administrator's own cited case (Mot. at 13) demonstrates, "[w]hen a state action is preempted under federal law, the state action does not implicate important state interests" for purposes of *Younger*. *Monster Bev. Corp.*, 2013 U.S. Dist. LEXIS 189315, at *16; *see also Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1205 (10th Cir. 2003) (affirming district court's conclusion on this factor where the "central and threshold issues in the case are federal Indian law issues"). The Administrator's claims are preempted for the reasons described above (*see* Sec. I, *supra*); accordingly, even if she were entitled to bring them in state court, they would not justify abstention here.

Fourth, the *Marlette* action is not a "quasi-criminal" action that can support abstention. *See Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584 (2013); *MacIntyre v. JP Morgan Chase Bank*, No. 12-CV-2586-WJM-MEH, 2015 WL 1311241, at *2 (D. Colo. Mar. 19, 2015) ("*Sprint* significantly cabined the breadth of *Younger* abstention as it has been applied in this circuit.").

### D. There Is No Basis for the Court to Decline Jurisdiction Under the Declaratory Judgment Act

Finally, the Administrator suggests in a conclusory way that this Court should decline to

exercise jurisdiction under the Declaratory Judgment Act pursuant to the five factors that the Tenth Circuit identified in *State Farm Fire Cas. Co. v. Mhoon*. (Mot. at 14-15.) These factors "arise largely out of consideration of whether exercising jurisdiction in the declaratory judgment action will interfere with or be less efficacious than resolution of the issues in a parallel proceeding." *Wingerter v. Gerber*, No. 09-CV-02000-PAB-MEH, 2010 WL 3730899, at *2 (D. Colo. Sept. 17, 2010). For the same reasons that *Younger* abstention is inappropriate (*see* Sec. II.C, *supra*), exercising jurisdiction will not "interfere with or be less efficacious" than resolution in the *Marlette* action. Cross River Bank is not a party in the *Marlette* action, and it seeks relief beyond what is at issue in the *Marlette* action. *See Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 982 n.3 (10th Cir. 2012). Accordingly, this Court should reject the Administrator's invitation to decline jurisdiction.[12]

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Motion to Dismiss be denied.

| | |
|---|---|
| Dated: May 16, 2017 | Respectfully submitted, |
| WHEELER TRIGG O'DONNELL LLP | DAVIS POLK & WARDWELL LLP |
| | /s/ Edmund Polubinski III |
| Craig May | Edmund Polubinski III |
| 370 17th Street, Suite 4500 | Lynn Earl Busath |
| Denver, Colorado 80202 | Bryan McArdle |
| Telephone: (303) 244-1800 | 450 Lexington Avenue |
| may@WTOtrial.com | New York, New York 10017 |
| | Telephone: (212) 450-4695 |
| | edmund.polubinski@davispolk.com |

*Attorneys for Plaintiff Cross River Bank*

---

[12] The Administrator's conclusory argument to the contrary does not cite even a single supporting case. (Mot. at 14-15.)

15

# CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- Edmund Polubinski III
  Edmund.Polubinski@davispolk.com, ecf.ct.papers@davispolk.com

- Bryan Patrick McArdle
  bryan.mcardle@davispolk.com, ecf.ct.papers@davispolk.com

- Lynn Earl Busath
  lynn.busath@davispolk.com

- Craig Ruvel May
  may@wtotrial.com, ganderson@wtotrial.com, shaw@wtotrial.com

- Nikolai N. Frant
  nikolai.frant@coag.gov, michele.kendall@coag.gov

- Trina Kissel Taylor
  trina.taylor@coag.gov

- Geoffrey N. Blue
  gblue@adroitadvocates.com,jbila@adroitadvocates.com,vray@klendagesslerblue.com,CKolbBettes@adroitadvocates.com

*s*/Edmund Polubinski III