**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:17-cv-00832-PAB-KMT

CROSS RIVER BANK,

    Plaintiff,

v.

JULIE ANN MEADE, in her official capacity as Administrator of the
Uniform Consumer Credit Code for the State of Colorado,

    Defendant.

---

**DEFENDANT'S REPLY IN SUPPORT OF HER 12(b)(1) and (6) MOTION TO DISMISS CROSS RIVER BANK'S COMPLAINT [DKT. 17]**

---

Defendant Julie Ann Meade, Administrator of the Uniform Consumer Credit Code, through counsel, submits this reply in support of her motion to dismiss [Dkt. 17]:

Cross River's complaint should be dismissed because it is nothing more than a thinly-veiled attempt to bolster Marlette's defense in its pending suit with the Administrator.

**I.    Cross River's complaint fails to state a claim because state usury law is not preempted when applied to non-bank loan assignees**

Cross River Bank describes at length why both Section 27 of the Federal Deposit Insurance Act (FDIA) and Section 85 of the National Bank Act (NBA) preempt state usury laws. (Dkt. 22, at 2-4.) The Administrator agrees, so long as the interest is being charged <u>by banks</u> on bank-originated loans. Cross River, however, has alleged that the Administrator is seeking to enjoin Marlette from enforcing terms of loans that were assigned to it by Cross River. (Dkt. 1, ¶ 8.) Thus, the issue presented by the Administrator's motion to dismiss is whether federal law

1

preempts state usury claims against <u>non-bank assignees</u>. Cross River's arguments on this issue are without merit, and dismissal is therefore proper as a matter of law.

    A.    <u>The text of Section 27 extends interest exportation only to banks – not assignees</u>

Citing the text of Section 27 and a Second Circuit case, *Madden v. Midland Funding*, the Administrator has argued that the FDIA extends its interest exportation rights only to banks. (Dkt. 17, at 7.) The Second Circuit concluded that although a non-bank could purchase credit card debt from a national bank, the non-bank could not enforce the bank's interest exportation rights. 786 F.3d 246, 251 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2505 (2016).

Contrary to Cross River's assertions (Dkt. 22, at 7), *Madden* is not an outlier; the Eleventh Circuit reached the same holding regarding Section 27's limited scope. In a decision ultimately vacated as moot (because the lenders stopped lending), the court upheld a Georgia usury law that limits the interest that non-banks can charge on bank-originated loans because, "[t]he language of [Section 27] refers only to state banks, and does not address non-bank businesses, such as payday stores, at all." *Bankwest, Inc. v. Baker*, 411 F.3d 1289, 1304 (11th Cir. 2005), *reh'g granted, op. vacated,* 433 F.3d 1344, *op. vacated due to mootness*, 446 F.3d 1358.[1] Further, in the context of complete preemption, this Court and many others have similarly concluded that Section 27 and Section 85 preemption extend only to banks. *See, e.g., Colorado ex rel. Salazar v. ACE Cash Express, Inc.*, 188 F. Supp. 2d 1282, 1284 (D. Colo. 2002) (Section 85 does not extend to non-banks); *West Virginia v. CashCall, Inc.*, 605 F. Supp. 2d 781, 785 (S.D. W. Va. 2009) (Section 27 "does not apply to non-bank entities").

With respect to the recent efforts to amend Section 27 and Section 85 to allow for

---

[1] Vacated opinions have no precedential value but can be relied on as persuasive. *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009).

assignment to non-banks, Cross River argues, citing a 2016 press release, that these efforts merely seek to "reaffirm" current law. (Dkt. 22, at 8.) A 2016 press release says nothing about Congress' intent when it enacted Sections 85 and 27. The proposed amendment does illustrate, however, that Congress could have extended interest exportation rights to non-bank assignees – but did not do so. *Cf. Jama v. Immigration & Customs*, 543 U.S. 335, 341 (2005) (expressing a "reluctance" to assume that Congress intended a specific meaning "when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest").[2]

In contrast to this authority, the cases cited by Cross River provide no basis for concluding that the text of Section 27 extends preemption to non-bank assignees. Cross River cites to *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 289 (7th Cir. 2005). (Dkt. 22, at 6.) However, *Olvera* interprets an Illinois state law (Section 5 of the Illinois Interest Act) and does not even mention Section 27 or Section 85. *Olvera*, 431 F.3d at 289.

Cross River also cites *FDIC v. Lattimore Land Corp.*, 656 F.2d 139, 148-49 (5th Cir. 1981) (Dkt. 22, at 6). But *Lattimore* addressed the assignment of a loan from a non-bank to a bank – exactly the opposite from the facts presented by Cross River's complaint. *Lattimore*, 656 F.2d at 148. *Lattimore* thus did not address whether banks can assign their preemption rights. *Id*.

As for Cross River's reliance on *Phipps v. FDIC* (Dkt. 22, at 6), *Phipps* involved "finders fees" that were charged by a national bank, and thus did not address charges imposed by a non-bank on a loan that it has purchased from a bank. 417 F.3d 1006, 1013 (8th Cir. 2005); *see Madden*, 786 F.3d at 253 (finding *Phipps* distinguishable because "the national bank was the

---

[2] The Dodd-Frank Act amended the NBA to "clarify" that the provisions of the NBA do not preempt the application of state law to bank subsidiaries, affiliates, or agents. 12 U.S.C. § 25b (e) and (h). Cross River asserts that these provisions address only "lending activity" by agents of national banks. (Dkt. 22, at 7.) But there is no textual support in Dodd-Frank for this assertion.

entity that charged the interest to which the plaintiffs objected"). Section 27's text thus supports the conclusion that bank exportation rights cannot be assigned to non-banks.

> B. The valid when made rule is a distinct concept, and there is no basis for reading it into Section 27 and Section 85

Given the absence of textual support for its position, Cross River argues that "Congress is presumed to have incorporated" the right to assign interest exportation rights when enacting Section 85 because the valid when made rule was "firmly established" in 1864. (Dkt. 22, at 6.)

The Supreme Court cases from the 1800s (*Gaither* and *Nichols*) that Cross River initially identified as primary support for the valid when made rule (Dkt. 1, at ¶ 90) addressed whether a loan becomes usurious merely because it is used as collateral in a subsequent usurious transaction. (Dkt. 17, at 9-11.) Here, there is no allegation of a subsequent usurious transaction that is alleged to invalidate the obligations of the consumers on the subject loans; there is no allegation that Marlette obtained the consumer loans in connection with a usurious loan to Cross River. Instead, Marlette merely purchases the loans. (Dkt. 1, at ¶ 5.)

With its response, Cross River backs away from *Gaither* and *Nichols*, stating that they were "cited for illustrative purposes." (Dkt. 22, at 5.) Cross River then cites to other authorities that, it argues, should be presumed to have been incorporated into Section 85 and, subsequently, into Section 27. (Dkt. 22, at 5-6.) But the new authorities similarly provide no support for inferring that Congress intended to allow banks to transfer their preemption rights.

Cross River cites to *Moncure v. Dermott*, 38 U.S. 345 (1839), *Tuttle v. Clark*, 4 Conn. 153 (1822), and the dissent in *Watkins v. Taylor*, 16 Va. 424 (1811). (Dkt. 22, at 5-6.) However, like *Gaither* and *Nichols*, these cases address whether a subsequent usurious transaction

4

invalidates an initial non-usurious transaction[3] – an issue not present when a bank sells a loan in a transaction not alleged to involve usury as between the bank and the purchaser.

The other authorities cited by Cross River similarly miss the mark. *Satterlee v. Matthewson*, 27 U.S. 380, 416 (1828) (Dkt. 22, at 6) is a property law case that does not involve lending. *Id*. The language that Cross River quotes is from a footnote, in which the court discussed the meaning of the term "ex post facto." *Id*. at 416 n.a. It is unclear why Cross River cites to *Concord Realty Co. v. Cont'l Funding Corp.*, 776 P.2d 1114, 1120 (Colo. 1989) (Dkt. 22, at 6); it was decided after Section 85 and Section 27 were passed and does not address the assignment of loans. *Id*.

Finally, the cited language in a footnote from William Blackstone's Commentaries of the Law of England (Dkt. 22, at 5) is a clause taken from a broader sentence that addresses the assignment of a usurious loan to a "bona fide holder." 1 William Blackstone, Commentaries on the Laws of England 355, 379-80 n.32 (18th London ed., W.E. Dean 1838) (**Ex. A**). When the entire sentence is read as a whole, it is evident that the footnote addresses whether a subsequent bona fide purchaser of a usurious loan can enforce the loan, and not whether a non-usurious loan can become usurious because it is assigned. *Id*.[4]

---

[3] In *Moncure*, the subsequent transaction was the sale of an existing bond "at a discount exceeding the legal rate of interest." 38 U.S. at 352. In *Tuttle*, the subsequent transaction was the sale of the note from an initial loan at what counsel alleged was "a greater discount than the legal interest." 4 Conn. at 155. In *Watkins*, the subsequent transaction was the assignment of the "second bond," allegedly in violation of "the statute against usury." 16 Va. at 435.

[4] Indeed, as support for the quoted clause, Blackstone cites to *Lowes v. Mazzaredo*, 1 Stark. 388 (**Ex. B**) and *Lowe v. Walker*, 2 Dougl. 736 (**Ex. C**). Blackstone, 379-80 n.32. *Lowes* and *Lowe* both involved the bona fide holder rule, and confirm that the quoted language from Blackstone's is inapposite to the facts presented. *Lowes*, 1 Stark. at 387 ("where the bill is good in its inception, an intermediate usurious transaction will not prevent an innocent holder from

It is evident that Cross River's argument regarding the valid when made rule derives from the argument advanced by the Office of the Comptroller of the Currency in an *amicus* brief. (Dkt. 22, at 7, citing the OCC's brief.) However, preemption determinations fall within the expertise of the courts and no deference is afforded to administrative interpretations. *Colo. Pub. Utilities Comm'n. v. Harmon*, 951 F.2d 1571, 1579 (10th Cir. 1991).

Further, the premise of Cross River's argument – that Congress is presumed to have incorporated common law principles – only applies if no contrary statutory purpose is evident. *United States v. Tex.*, 507 U.S. 529, 534 (1993). Here, both Sections 85 and 27 make clear that the preemption rights that they create belong only to banks. *Bankwest*, 411 F.3d at 1304; *Madden*, 786 F.3d at 251. Permitting assignment thus would contravene Congressional intent.

C.  Cross River incorrectly conflates preemption with complete preemption

The Administrator's motion to dismiss includes two independent preemption-based grounds for dismissal. One ground is that Section 27 does not preempt state usury law as applied to non-bank assignees. (Dkt. 17, at 5-11.) The second ground involves the distinct concept of complete preemption, and argues that this Court lacks subject matter jurisdiction under the well-pleaded complaint rule.[5] (Dkt. 17, at 2-4.) In opposing dismissal, Cross River conflates preemption and complete preemption, and thereby risks confusing the issues presented. (Dkt. 22, at 4.) Specifically, Cross River implies that the holding in *Thomas v. U.S. Bank*, 575 F.3d 794

---

recovering"); *Lowe*, 2 Dougl. 741 ("though bills should be considered as [usurious], still the intention cannot have been to make them void in the hands of persons ignorant of the usury").

[5] The Administrator asserted in her motion to dismiss that state usury claims against state banks – while preempted – are not completely preempted and that this Court therefore does not have subject matter jurisdiction per the well-pleaded complaint rule. (Dkt. 17, at 2-4.) However, upon consideration of the case law cited in Cross River's response (Dkt. 22, at 9-10) the Administrator withdraws her well-pleaded complaint rule challenge to the Court's jurisdiction.

(8th Cir. 2009), is a basis for the Administrator's preemption argument. (Dkt. 22, at 4.) However, *Thomas* addresses complete preemption, and the Administrator thus does not rely upon *Thomas* in arguing that state usury law, applied to non-banks, is not preempted. (Dkt. 17, at 5-11.)

**II.     The Administrator's claims are against Marlette – and Cross River lacks standing**

Cross River's alleged standing is based on the Administrator's pending suit against Marlette (the "Enforcement Action"). On very similar facts, the court in *Goleta Nat'l Bank v. Lingerfelt*, 211 F. Supp. 2d 711, 719 (E.D.N.C. 2002), held that the bank in that case did not have standing to sue North Carolina based on its usury enforcement action against a non-bank.

Cross River contends that *Goleta* is distinguishable because "there were no allegations of <u>any</u> ongoing economic interest by the bank in the loans at issue." (Dkt. 22, at 12 (emphasis supplied).) To the contrary, the bank in *Goleta* maintained the <u>entire</u> ongoing economic interest in the loans in that case because, per the bank's complaint, the non-bank party was "merely [the bank's] agent in promoting, originating, and servicing these loans." *Goleta Nat'l Bank*, 211 F. Supp. 2d at 714 n.4. The court's reasoning in *Goleta* thus applies equally to Cross River's suit.

As in *Goleta*, the Enforcement Action does not name Cross River as a defendant, does not challenge Cross River's right to lend in Colorado at the rates permitted by its home state, and will not adjudicate any rights that will be binding upon Cross River. *Goleta Nat'l Bank*, 211 F. Supp. 2d at 719. While Cross River makes the conclusory allegation that it "will lose revenue" as a result of the Enforcement Action, such an indirect effect "is not enough to give it standing in the instant action." *Id*. The Administrator's Enforcement Action is strictly about Marlette's violation of Colorado law, and Cross River's claims should be dismissed for lack of standing.

### III. The Court should dismiss the case on abstention grounds

The Administrator has also moved the Court to dismiss the case on the basis of the *Younger* abstention doctrine. Cross River contends there are four reasons *Younger* does not apply here. None of these reasons prevents the Court from abstaining in this case.

First, Cross River contends that abstention is premature because the Enforcement Action has not been remanded. (Dkt. 22, at 13.) The Administrator's motion acknowledges that the Enforcement Action must be remanded before *Younger* would apply (Dkt. 17, at 11); however, the motion to remand is fully briefed and will likely be ruled on before, or in conjunction with, the Court's ruling in this case. For efficiency, the Administrator has addressed the issue now.

Second, Cross River contends that *Younger* does not apply because the parties are not identical (Dkt. 22, at 13) – but *Younger* does not require identity of the parties where they have a sufficient identity of interest. *Shields v. Duncan*, 2015 U.S. Dist. LEXIS 180592, at *34 (D. Colo. Oct. 23, 2015) (citing *Hicks v. Miranda*, 422 U.S. 332, 348-49 (1975)). Cross River is the contractual counter-party to Marlette, the subject of the Enforcement Action. Marlette has raised the same federal preemption defenses in the Enforcement Action that Cross River asserts in its complaint. (Dkt. #1, at ¶¶ 99-107; 1:17-cv-00575-PAB-MJW, Dkt. #1, at ¶¶ 4-5.) Federal injunctive or declaratory relief in this case would interfere with the Enforcement Action in state court, if it is remanded. Thus, identity of the parties is not required.

Third, Cross River argues that there is no important state interest due to the purported federal preemption of state usury law in this case. (Dkt. 22, at 14.) For preemption to defeat *Younger* abstention, however, the preemption must be "facially conclusive." *Eagle Air Med Corp. v. Colo. Bd. of Health*, 570 F. Supp. 2d 1289, 1293-95 (D. Colo. 2008) (holding federal

aviation regulations did not facially conclusively preempt state emergency air transport laws). Or, as described in the case cited by Cross River, "[f]or a state action to be preempted for the purposes of *Younger* abstention, the preemption must be 'readily apparent.'" *Monster Bev. Corp. v. Herrera*, 2013 U.S. Dist. LEXIS 189315, at *16 (C.D. Cal. Dec. 16, 2013). Here, preemption is not "facially conclusive" or "readily apparent." As set forth in prior sections of this brief, banks cannot assign their preemption rights to non-bank entities as a matter of law, and, furthermore, the Administrator has specifically alleged that Marlette – not Cross River – is the true lender in the transactions. Preemption cannot be facially conclusive when a factual issue could be determinative of its application. *Verizon New England Inc. v. Rhode Island Department of Labor and Training*, 723 F.3d 113, 119 (1st Cir. 2013). Therefore, *Younger's* requirement that there be an important state interest at stake is satisfied. *See Monster Bev. Corp.*, 2013 U.S. Dist. LEXIS 189315, at *19 ("The state's interest in a civil proceeding is readily apparent when the state through one of its agencies acts essentially as a prosecutor.").

Fourth, Cross River contends that the Enforcement Action is not the sort of proceeding that implicates *Younger*. (Dkt. 22, at 14.) In *Sprint*, on which Cross River relies, the Supreme Court concluded that "civil enforcement proceedings" are one of the three categories of cases to which the doctrine applies. *Sprint Communs. Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013). The Court described several characteristics of civil enforcement proceedings. "In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action." *Id*. at 592. "Investigations are commonly involved, often culminating in the filing of a formal complaint…." *Id.* The enforcement proceeding is "akin to a criminal prosecution" in that it is brought to enforce a state law and sanction the party for some wrongful civil act. *Id*. The Enforcement Proceeding

fits all of these characteristics. The Administrator, a state actor tasked with enforcing Colorado law, performed an examination of Marlette and then filed a formal civil complaint to enforce the Code. (1:17-cv-00575-PAB-MJW, Dkt. 1-8, at ¶¶ 1, 34-45.) The Enforcement Action falls precisely within the "civil enforcement proceeding" as described in *Sprint*. Accordingly, Cross River has not identified any *Younger* element that defeats the Administrator's motion. When the three elements are satisfied, abstention is mandatory. *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999).

Alternatively, the Administrator asked the Court to decline jurisdiction under the Declaratory Judgments Act. Cross River opposes the argument for the same reasons as the *Younger* argument, (Dkt. 22, at 15), which the Administrator has addressed. Cross River also contends that jurisdiction should be exercised because it is seeking broader relief. But a ruling in the Enforcement Action on preemption will impact every request in Cross River's prayer for relief, and a ruling in this case would affect the Enforcement Action.

WHEREFORE, the Administrator respectfully requests that the Court enter an order dismissing Cross River's complaint with prejudice.

Dated, May 30, 2017

                                        CYNTHIA H. COFFMAN
                                        Attorney General

                                        s/ *Nikolai N. Frant*
                                        NIKOLAI N. FRANT
                                        TRINA K. TAYLOR
                                        Assistant Attorneys General
                                        Ralph L. Carr Colorado Judicial Center
                                        1300 Broadway, 6th Floor
                                        Denver, Colorado 80203
                                        Telephone: 720-508-6111
                                        Email: nikolai.frant@coag.gov

# CERTIFICATE OF SERVICE

      I hereby certify that on this 30th day of May, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

| | |
|---|---|
| Edmund Polubinski III, Esq.<br>Lynn Earl Busath, Esq.<br>Bryan McArdle, Esq.<br>Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>Email: edmund.polubinski@davispolk.com<br>        lynn.busath@davispolk.com<br>        bryan.mcardle@davispolk.com | Craig May, Esq.<br>Wheeler Trigg O'Donnell LLP<br>370 Seventeenth Street, Suite 4500<br>Denver, CO 80202<br>Email: may@WTOtrial.com |

                                      s/ *Michele A. Kendall*
                                      Paralegal